IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANNA FORD, | Case No.: 3:23-cv-00871-SB |
| Plaintiff, | |
| v. | ORDER |
| ST. CHARLES HEALTH SYSTEM, INC., | |
| Defendant. | |

**Adrienne Nelson, District Judge**

United States Magistrate Judge Stacie F. Beckerman issued Findings and Recommendation ("F&R") in this case on November 06, 2023, in which she recommended that this Court grant defendant St. Charles Health System, Inc.'s motion to dismiss. Plaintiff Anna Ford timely filed objections to the F&R, to which defendant responded. *See* Objs. to F&R ("Objs."), ECF [26]; Resp. to Objs. to F&R, ECF [29]. The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). If any party files objections to a magistrate judge's proposed findings and recommendations, "the court shall make a de novo determination of those portions of the report." *Id.* If no objections are filed, then no standard of review applies. However, further review by the district court *sua sponte* is not prohibited. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Advisory Committee notes to Federal Rule of Civil Procedure 72(b) recommend that, when no objection is filed, the recommendations be reviewed for "clear error on the face of the record." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

## DISCUSSION

Plaintiff brings this putative class action against defendant, her former employer, alleging

1

state-law claims for violations of Oregon's wage and hour laws. *See* Notice of Removal, ECF [1], Ex. 1. Plaintiff's wage claims are primarily based on Oregon Revised Statutes ("ORS") §§ 653.055 and 653.261 and Oregon Administrative Rule ("OAR") 839-020-0050. *Id.* ¶¶ 19-29. ORS § 653.055 "provid[es] for liability of an employer 'who pays an employee less than the wages to which the employee is entitled[.]'" *Maza v. Waterford Operations, LLC*, 300 Or. App. 471, 473, 455 P.3d 569, 570 (2019) (quoting ORS § 653.055(1)).

ORS § 653.261(1)(a) authorizes the Oregon Bureau of Labor and Industries ("BOLI") to "adopt rules prescribing minimum conditions of employment, including minimum meal periods, 'as may be necessary for the preservation of the health of employees.'" *Id.* at 473 (quoting ORS § 653.261(1)(a)). Pursuant to that authority, BOLI promulgated OAR 839-020-0050(2), which requires an employer to provide a minimum unpaid meal period of thirty continuous minutes, and if the employer fails to do so, the employer must pay a penalty wage. *Id.* at 473-74.

Defendant moved to dismiss on the grounds that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, completely preempts plaintiff's state law claims, and plaintiff fails to state a claim upon which relief can be granted. F&R, ECF [24], at 1. Judge Beckerman agreed.

Plaintiff makes two objections to the F&R: (1) it improperly finds complete preemption of plaintiff's state law claims; and (2) even with a finding of preemption, it improperly dismissed plaintiff's claims with prejudice. Objs. 2-6. As set forth below, the Court finds that the F&R improperly found that plaintiff's state law claims were completely preempted. Thus, the Court only addresses plaintiff's first objection.

**A.    Preemption**

In the Ninth Circuit, courts engage in a two-prong analysis when analyzing whether employment class actions are preempted by the LMRA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, the court asks whether the asserted cause of action involves a "right [that] exists solely as a result of the CBA." *Id.* (citation omitted). If not, the court proceeds to the second step and asks "'whether a plaintiff's state law right is substantially dependent on analysis of [the CBA],' which turns on

whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153 (9th Cir. 2019) (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016)).

    1.    *Prong One*

The F&R found plaintiff's claims preempted on the basis that ORS § 653.261(3) sets forth a carve-out that explicitly excludes certain nurses covered by collective bargaining agreements ("CBAs") from BOLI regulation protections. ORS § 653.261(3), in relevant part, states: "Rules adopted by [BOLI] pursuant to [ORS § 653.261(1)] regarding meal periods and rest periods do not apply to nurses who provide acute care in hospital settings if provisions of [CBAs] entered into by the nurses prescribe rules concerning meal periods and rest periods."

Judge Beckerman found this carve-out to be significant, reasoning, that "there does not appear to be any dispute that [plaintiff] and the other class members are nurses who 'provide[d] acute care in hospital settings,' and 'were subject to CBAs that 'prescribe[d] rules concerning meal periods and rest periods.'" F&R 20 (citing ORS § 653.261(3)). Thus, because the carve out exempted plaintiff and the other class members from the BOLI regulations, Judge Beckerman found that the CBA was the sole source of plaintiff's and other class members' rights concerning meal and rest periods. *Id.*

Plaintiff, however, argues that the F&R should have looked to the plain language of the CBA, which defers to state law for requirements related to interrupted or shorted meal periods. Objs. 2. Plaintiff points to provisions in the CBA that state: "[Defendant] will comply with all legal requirements with respect to meals and breaks if not otherwise provided in this Agreement" and "All other provisions regarding meal and/or rest breaks contained in the labor contract, work instructions, or [BOLI] regulations will apply." Notice of Removal, Ex. 2, at 13-14. Plaintiff maintains that those provisions are not mere catchall provisions, but "bargained-for limitation[s] on the CBA's replacement of BOLI's rules on meal and rest periods." Objs. 2.

The F&R relied on the Ninth Circuit's decision in *Curtis v. Irwin Industries, Inc*. In *Curtis*, the Ninth Circuit found the plaintiff's claims preempted because a state statute contained a carve-out that

expressly excluded employees covered by valid CBAs. 913 F.3d at 1153. However, unlike the present case, the CBA in *Curtis* contained a bargained-for alternative standard to the minimum or default state standard covered under the statute. *Id.* at 1154. The court found that "[b]y [the statute's] terms, . . . the [default standards provided in the statute] do[ ] not apply to an employee who is subject to a qualifying CBA." *Id.* at 1153-54. To find otherwise, "would render the collective bargaining exception in [the statute] superfluous." *Id.* at 1154. Supporting that interpretation, the court noted that the statute's exception demonstrated the legislature's intent to allow unionized employees to contract around the statute's requirements. *Id.* at 1154-55. It follows that, when state statutes related to employee rights include carve-out provisions excluding certain employees covered by CBAs, and the exclusion is triggered, any right an employee may have to the associated statutory benefits arise exclusively under the CBA. Put simply, if a statutory exclusion provision is triggered, an employee's claims under that statute will fail under the first prong of the *Burnside* test. *Id.* at 1151.

Contrasting *Curtis*, plaintiff relies on *Paige v. Henry J. Kaiser Company*, 826 F.2d 857, 863 (9th Cir. 1987). Objs. 3-4. *Paige*, plaintiff argues, "rejected the notion that by stating that the parties agree that state law will govern certain aspects of the relationship between an employer and its employees, a CBA removes the state courts' jurisdiction over enforcement and interpretation of that state law." *Id.* at 4. Judge Beckerman was unpersuaded by plaintiff's reliance on *Paige*, stating "[It] did not address or appear to involve a wage claim under a state statute that set forth a carve-out exception for certain CBA-covered employees." F&R 20.

*Paige* involved employees who filed safety complaints and were subsequently discharged, which they claimed was a violation of the California Occupational Safety and Health Act ("Cal/OSHA"). 826 F.2d at 859-60. The Ninth Circuit centered its analysis on "whether the [state] tort action 'as applied here confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract.'" *Id.* at 863 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). The court maintained, "Congress did not intend for section 301 to preempt 'state rules that

4

proscribe conduct, or establish rights and obligations, independent of a labor contract.'" *Id.* (quoting *Lueck*, 471 U.S. at 212). While the underlying CBA in *Paige* included a "catchall" provision stating that the employer would comply with all state and federal law, including Cal/OSHA, the Ninth Circuit found that the defendant had *no authority* to contract out of Cal/OSHA requirements. *Id.* at 865. Thus, a right cannot solely arise from a CBA where the CBA cannot legally grant or deny that right.

While its true *Paige* did not involve a wage claim under a state statute with a carve-out exception and *Curtis* does, *Paige* and *Curtis* do not conflict. Reading those principles together, where a defendant *has legal authority* to contract for standards that differ from the statute, and with that authority bargains for different standards, the operative CBA, not the statute, controls.

While not mentioned by the parties or the F&R, the principles set forth in *Burnside* and *McCray* are instructive. The Ninth Circuit in *Burnside* and *McCray* addressed state statutes containing opt-out provisions for CBA-covered employees. *Burnside*, 491 F.3d at 1064; *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1010-11 (9th Cir. 2018). In both cases, the court expressly "rejected the employer's argument that the fact that a right could theoretically be waived meant that the right necessarily depended on a CBA." *McCray*, 902 F.3d at 1010-11 (discussing *Burnside*, 491 F.3d at 1064-65). Indeed, the right to be paid according to state law is "'one that came into existence entirely independently of the CBA, and that remains in existence, independently of the CBA' unless and until the CBA waives it." *Id.* at 1011 (quoting *Burnside*, 491 F.3d at 1064). The Court emphasized that this principle stood irrespective of an opt-out provision. *Id.* ("[T]he fact that the state law 'contain[ed] an opt-out provision [did] not change [the] analysis.'") (quoting *Burnside*, 491 F.3d at 1070).

In the present case, while ORS § 653.261(3) authorized defendant to contract for standards that differed from the BOLI regulations, the fact remains that it failed to do so. More significantly, defendant's incorporation of existing state law forces plaintiff's claims to be independent of the CBA. The Court need only to look at the plain language of ORS § 653.261(3), which provides that nurses who provide acute care are exempted under the statute *where their CBAs prescribe meal and rest period rules*. Had the CBA not incorporated existing BOLI regulations, defendant would have been able to utilize the exemption,

5

as the CBA does in fact prescribe meal and rest period rules.  However, the CBA's meal and rest period rules are silent on the issue raised by plaintiff: the right to a continuous meal period.  Thus, the only source of this right in the CBA is by virtue of its deferral to BOLI regulations.  In turn, the CBA's incorporation of existing law sets plaintiff's claims outside of interpretation of the contract terms, and into interpretation of state law.  Thus, the Court finds that plaintiff's claims arise independently under state law and are not subject to § 301 preemption on that basis.

    2.    *Prong Two*

Because plaintiff's claims arise independently under state law, the Court turns to whether her claims substantially depend on an analysis of the CBA.  "To answer this, [the court] must decide if [plaintiff's] case will require a court to merely 'look to' the CBA or instead 'interpret' its terms."  *McCray*, 902 F.3d at 1011 (citations omitted).  Merely needing to "look to" a CBA is insufficient to preempt a state law claim, but needing to interpret a CBA will render the claim preempted.  *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994).  "Interpret" is narrowly defined—"it means something more than 'consider,' 'refer to,' or 'apply.'"  *Balcorta v. Twentieth Century Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000).  Indeed, "reading and applying relevant, unambiguous provisions of the CBA" requires a court to only "look to," rather than "interpret," the agreement.  *McCray*, 902 F.3d at 1012.

The only state regulation that plaintiff seeks to enforce is OAR 839-020-0050(2).  F&R at 7.  OAR 839-020-0050(2)(a) requires employers to provide, "for each work period [between six and eight hours in length], a meal period of not less than [thirty] continuous minutes during which the employee is relieved of all duties."  If the employee is "not relieved of all duties for [thirty] continuous minutes during the meal period," subsection (2)(b) requires the employer to "pay the employee for the entire [thirty]-minute meal period."  Plaintiff alleges that defendant "failed to ensure sufficient uninterrupted [thirty]-minute meal periods, as required by law, were taken by [p]laintiff and other class members, resulting in regular net underpayment of wages to them."  Notice of Removal, Ex. 1, ¶ 6.

Defendant argues that the interpretive questions are "what it means to 'provide' a meal period, what obligation [p]laintiff has to 'take' her meal period, and what constitutes 'interruption' to a meal

period." Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), ECF [12], at 8. Defendant points to Section 7.7 of the CBA, which states, "[Defendant] is responsible for providing rest breaks and meal periods; it is the nurse's responsibility to take them." *Id.*, Ex. 2, at 20. Moreover, defendant points to another provision that requires nurses to inform the charge nurse if they "anticipate[ ] that he or she will be unable to take a meal period or rest break[.]" *Id.*, Ex. 2, at 21. Thus, defendant maintains that "[w]hether alleged interrupted meal periods constitute compensable time is a dispute regarding the meaning of the CBA's terms and relative responsibilities of the parties and requires interpretation of the CBA." Def.'s Reply 8-9.

Defendant misunderstands the principal inquiry. The Court's primary task in deciding this case will be determining whether defendant provided uninterrupted meal periods of not less than thirty minutes. Plaintiff's responsibility "to take" the meal period is triggered only if defendant provides a continuous meal period. Because the CBA does not define "provide" or "continuous," the Court need not interpret the CBA to determine whether a continuous meal break was provided. That is, if defendant provides a meal period, but continues to interrupt that meal period, it seems unambiguous that defendant is not actually *providing* a continuous meal period. Therefore, the Court finds that plaintiff's claims are not substantially dependent on interpreting the CBA.

## CONCLUSION

Accordingly, the Court declines to adopt Judge Beckerman's Findings and Recommendation, ECF [24]. Based on the Court's *de novo* review, plaintiff claims are not preempted by § 301 of the LMRA, and defendant's Motion to Dismiss, ECF [4], is DENIED.

IT IS SO ORDERED.

DATED this 26th day of March, 2024.

_____
Adrienne Nelson
United States District Judge

7