**SARAH AMES BENEDICT, OSB #132675**
sarahbenedict@dwt.com
**TIM CUNNINGHAM, OSB #100906**
timcunningham@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
560 SW Tenth Avenue, Suite 700
Portland, Oregon  97205
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

    Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANNA FORD, an individual,<br><br>                Plaintiff,<br><br>   v.<br><br>ST. CHARLES HEALTH SYSTEM, INC., an Oregon corporation,<br><br>                Defendant. | Case No. 3:23-CV-00871-SB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

DAVIS WRIGHT TREMAINE LLP
560 SW Tenth Avenue, Suite 700
Portland, Oregon  97205
(503) 241-2300 main · (503) 778-5299 fax

## I.     INTRODUCTION

Plaintiff's Opposition to St. Charles's Motion to Compel Arbitration and Stay Proceedings (the "Opposition") fails to provide sufficient basis to deny St. Charles's Motion, for three reasons:

*First*, in an effort to distract from the merits of St. Charles's Motion, the Opposition incorrectly attempts to reframe the Motion as a motion for reconsideration subject to FRCP 59 or 60. Plaintiff's mischaracterization of St. Charles's Motion – which seeks different relief than the earlier Motion to Dismiss Plaintiff's Complaint – has no bearing on whether the Court should compel arbitration. Even if the Motion seeks reconsideration (and it does not), neither FRCP 59 nor FRCP 60 apply because St. Charles does not seek relief from a final judgment or order.

*Second*, St. Charles has not waived its right to arbitration by filing a single motion to dismiss, especially where it has not engaged in discovery or other litigation activity that would support waiver. Plaintiff cites no case to the contrary.

*Third*, the collective bargaining agreement ("CBA") between the parties prescribes a ***mandatory*** grievance and arbitration procedure. The Opposition isolates a single sentence in one section of the CBA to argue otherwise, but the Court examines the CBA's grievance and arbitration provisions as a whole – not a single phrase in isolation – to interpret its meaning. And because the CBA includes an arbitration provision, the Court presumes arbitrability and resolves any doubt in favor of arbitration.

Because Plaintiff's employment was subject to the CBA and her claims fall within the scope of the CBA's arbitration provision, the Court should grant St. Charles's Motion, compel arbitration under the FAA, and stay this action pending arbitration.

Page 1 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

DAVIS WRIGHT TREMAINE LLP
560 SW Tenth Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

## II. ARGUMENT
### A. Neither FRCP 59 nor FRCP 60 Apply to St. Charles's Motion to Compel Arbitration.

As the Motion makes clear, St. Charles moves the Court for an order compelling arbitration – not for reconsideration of its March 26, 2024 Order denying St. Charles's Motion to Dismiss Plaintiff's Complaint. Notwithstanding this fact, the Opposition argues that St. Charles's Motion should be construed by the Court as a motion for reconsideration subject to FRCP 59(e) or FRCP 60(b). Plaintiff is wrong; not only is the Motion *not* a request for reconsideration, even if it were, Rules 59 and 60 only apply to requests to amend or modify a final order or judgment, not an interlocutory order.

*First*, St. Charles's Motion is not a motion for reconsideration of the Court's March 26, 2024 Order, because St. Charles seeks substantively different relief on a different legal basis: St. Charles seeks an order compelling arbitration of Plaintiff's claims under the FAA and a stay of proceedings pending arbitration, not dismissal under Rule 12 for failure to state a claim. *Cf.* FRCP 7(b) (stating that a motion must "state with particularity the grounds for seeking the order" and "state the relief sought"); *see also Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990) ("We agree with the district court that [movant's] second motion was a new motion and not a motion for reconsideration. The second motion sought different relief than that sought in the first motion.").

*Second*, whether or not the Motion is for reconsideration (and it is not), neither FRCP 59(e) nor FRCP 60(b) apply here on their face. FRCP 59(e) provides for a 28-day deadline for a party to move the court to grant a new trial after a judgment is entered. *See* FRCP 59(e). Similarly, FRCP 60(b) provides for grounds for relief from a ***final judgment, order, or proceeding***. *See* FRCP 60(b). Here, St. Charles is not moving the Court for a new trial, as trial has not yet occurred. And there is not a final judgment or order in this case which St. Charles is asking the Court to rescind. Accordingly, neither FRCP 59(e) nor FRCP 60(b) apply. Tellingly,

Page 2 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

DAVIS WRIGHT TREMAINE LLP
560 SW Tenth Avenue, Suite 700
Portland, Oregon  97205
(503) 241-2300 main · (503) 778-5299 fax

Plaintiff cites to *no* authority from *any* court construing a motion to compel arbitration as a motion for reconsideration under either FRCP 59(e) or FRCP 60(b). In any event, even if St. Charles *did* move for reconsideration, neither Rule 59 nor Rule 60 would apply, because St. Charles would not be seeking to disturb a final order or judgment. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) (rejecting argument that Rule 60 applied to a motion for reconsideration as "built upon a false premise").[1]

### B. St. Charles Has Not Waived Its Right To Arbitrate.

The Opposition argues that because St. Charles previously moved to dismiss Plaintiff's Complaint, it has waived its right to arbitration. In the Ninth Circuit, a party asserting that the other party has waived its right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). The party opposing arbitration bears the burden of showing waiver. *Id*. Here, St. Charles has filed a single motion to dismiss, and the parties have yet to engage in discovery or any litigation on the merits. Under these facts, Plaintiff cannot meet her burden of showing that St. Charles waived its right to arbitration.

---

[1] For all of these reasons, the Court should disregard the Opposition's analysis of the FRCP 60(b) factors. Even if the Court does consider the Opposition's arguments, they are unpersuasive. *First*, the Opposition misstates the purpose of St. Charles's citation to the Supreme Court's holding in *Smith v. Spizzirri*, 601 U.S. 472 (2024). St. Charles cited *Spizzirri* for the proposition that *if* the Court grants its Motion, it should stay this case pending arbitration – not to argue that there has been an intervening change in controlling law justifying the Court's recission of its March 26, 2024 Order. *Second*, while the Opposition argues St. Charles cannot claim excusable neglect because it "must have understood" that moving to compel arbitration was not appropriate because it previously filed a Motion to Dismiss Plaintiff's Complaint, that argument ignores the fact that parties routinely file dispositive motions before moving to compel arbitration – including in cases cited by the Opposition. *E.g.*, *Giles v. Dolgen Cal., LLC*, 2021 WL 5830041 (C.D. Cal. Nov. 15, 2021).

Page 3 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

DAVIS WRIGHT TREMAINE LLP
560 SW Tenth Avenue, Suite 700
Portland, Oregon  97205
(503) 241-2300 main ∙ (503) 778-5299 fax

Filing a single motion to dismiss does not constitute an intentional act inconsistent with the right to arbitrate. *E.g., Britt on behalf of California v. Lennar Corp.*, -- F. Supp. 3d --, 2024 WL 1995243, at *6 (E.D. Cal. 2024) (defendants' filing of a motion to dismiss did not waive right to arbitration, where defendants had objected to participating in discovery and did not engage in other active litigation prior to moving to compel arbitration); *United Specialty Ins. Co. v. Clean and Sober Media LLC*, 2021 WL 3623300, at *4 (C.D. Cal. Apr. 16, 2021) (defendant's filing of a single motion to dismiss, coupled with minimal additional litigation activity, was insufficient to establish waiver of right to arbitration); *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1233 (D. Haw. 1999) ("Moving for a protective order, participating in pre-trial discovery, or filing a motion to dismiss similarly do not alone waive a party's right to arbitrate.").

Tellingly, the Opposition does not cite a single case holding that a defendant's one motion to dismiss was – standing alone – sufficient to waive the right to arbitrate. That is because courts in this circuit find waiver only where a motion to dismiss was coupled with prolonged delays and significant additional litigation activity. *See, e.g.*, *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (reversing district court's order granting motion to compel arbitration where in addition to filing a motion to dismiss, the defendant litigated multiple motions, approved a pre-trial conference order, and waited two years to compel arbitration); *Kelly v. Public Utility Dist. No. 2 of Grant County*, 552 F. App'x 663, 665 (9th Cir. 2014) (holding that defendants waived their right to arbitrate where they waited 11 months to file a motion to compel arbitration, conducted discovery, and litigated both a motion to dismiss and a motion for preliminary injunction).

The Opposition relies on *Newirth ex rel. Newirth v. Argie Seniors Cmtys.*, LLC, 931 F.3d 935, 941 (9th Cir. 2019), and *Giles v. Dolgen Cal., LLC*, 2021 WL 5830041 (C.D. Cal. Nov. 15, 2021), to argue that St. Charles has engaged in acts inconsistent with its right to

Page 4 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

DAVIS WRIGHT TREMAINE LLP
560 SW Tenth Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

arbitration. Both *Newirth* and *Giles* are easily distinguishable, because in addition to moving to dismiss, the defendants in each of those cases engaged in substantial litigation activity and discovery before moving to compel arbitration. In *Newirth*, the defendant initially filed a motion to compel arbitration, withdrew it, filed a motion to dismiss plaintiff's complaint, and then renewed its motion to compel arbitration. *Newirth*, 931 F.3d at 939. During this time, the parties actively engaged in discovery, including exchanging initial disclosures, participating in a discovery conference, and entering into a court-approved stipulation regarding the production of documents and electronic records. *Id*. Similarly, in *Giles*, the defendant moved to dismiss and the plaintiffs filed an amended complaint in response. *Giles*, 2021 WL 5830041, at *2. The defendant proceeded to stipulate to the filing of five more amended complaints, before moving to dismiss the sixth amended complaint. *Id*. After the motion to dismiss was granted with leave to amend, plaintiffs filed a seventh amended complaint, which defendant answered. *Id*. The parties then filed a joint Rule 26(f) report. *Id*. Only then did the defendant move to compel arbitration. *Id*.

Unlike the defendants in *Newirth* and *Giles*, besides filing a single Motion to Dismiss, St. Charles has not engaged in ***any*** litigation or discovery in this case. After Plaintiff filed her Complaint, St. Charles promptly moved for dismissal. To date, St. Charles's only other affirmative actions in this litigation are the filing of an answer to Plaintiff's Complaint (in compliance with FRCP 12) and appealing the Court's Order denying its Motion to Dismiss. The parties have yet to hold a Rule 26(f) conference or exchange initial disclosures or other written discovery, and no documents have been produced. There is no basis for a finding of waiver under these facts. "In fact, the Ninth Circuit has never held that a single motion to dismiss on the merits conclusively demonstrates acts inconsistent with the right to compel arbitration." *United Specialty Ins. Co.*, 2021 WL 3623300 at *4.

Page 5 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

DAVIS WRIGHT TREMAINE LLP
560 SW Tenth Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

### C. Plaintiff's Claims Are Subject To Arbitration Under The Parties' CBA.

As the Opposition concedes, the FAA reflects a "liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, the Court must compel arbitration if: (1) a valid agreement to arbitrate exists; and (2) the dispute falls within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When making this determination, courts should be mindful "that where the contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc., v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Indeed, "the most minimal indication of the parties' intent to arbitrate must be given full effect." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).

St. Charles's Motion detailed how the requirements to compel arbitration under the FAA are met here: (1) Plaintiff was a unionized nurse who agreed to be bound by the terms of the CBA (including its arbitration clause) in her employment with St. Charles; and (2) Plaintiff's claims fall within the scope of the CBA's arbitration provision.

In response, the Opposition does not dispute the first prong—an arbitration provision exists in the parties' CBA. Instead, Plaintiff argues that the provision does not apply because the CBA's grievance and arbitration procedures are permissive, not mandatory.[2] But when taken as a whole, the language of the CBA's Grievance Procedure article is clear:

---

[2] The Opposition also argues that the Court's March 26, 2024 Order denying St. Charles's Motion to Dismiss Plaintiff's Complaint supports denial of St. Charles's Motion because there is "little meaningful distinction" between the interpretation and application of CBA provisions under the FAA and LMRA. But whatever distinction may exist between the interpretation and application of CBA provisions under federal law is immaterial. As the Court concluded in its

Page 6 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

"It is the intent of the parties that grievances be adjusted informally whenever possible and at the first level of supervision. Further, it is the intent of the Parties that grievances be heard by a different Hospital representative at each step of the process. Both parties recognize the individual rights of employees to present grievances as provided for in section 9(a) of the National Labor Relations Act." CBA § 6.1.

"Whenever a nurse feels dissatisfied in connection with the interpretation and the application of the provisions of this Agreement, the nurse may present a grievance in accordance with the procedures set forth in this Article." CBA § 6.2.

For grievances that are not settled informally, the Grievance Procedure prescribes the following three-step process:

### Step One:

"If an employee has a grievance that has not been settled informally, the matter *shall* be reduced to writing indicating the employee's understanding of the dispute and of the provisions of the Agreement that have allegedly been violated." CBA § 6.3 (emphasis added).

"The grievance *shall* be presented to the immediate supervisor, with a good faith effort to copy Human Resources, within 14 calendar days from when the employee became aware or reasonably should have been aware of the event constituting the grievance." CBA § 6.3 (emphasis added).

### Step Two:

"If the grievance is not settled in Step One, it may be appealed in writing by the grievant, or with the grievant's concurrence by the Association, to the Chief Nurse Officer…" CBA § 6.3.

The Chief Nurse Officer or designee *shall* meet with the Association Representative and the grievant within 10 calendar days of the receipt of the appeal and together they *shall* attempt to resolve the grievance. The Chief Nurse Officer or designee *shall* give a written decision to the grievant, with a copy to the Association, within seven calendar days after the meeting." CBA § 6.3 (emphasis added).

---

March 26, 2024 Order, the parties' CBA "does in fact prescribe meal and rest period rules[]" that applied to Plaintiff's employment and form the basis for her claims. Dkt. 30 at 6.

Page 7 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

DAVIS WRIGHT TREMAINE LLP
560 SW Tenth Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

> "If the parties are unable to resolve the grievance…the decision may be appealed in writing by the grievant or the Association to the St. Charles Medical Center Bend CEO or designee."  CBA § 6.3.

### Step Three:

> "The St. Charles Medical Center Bend CEO or designee *shall* give a written decision to the grievant and the Association Representative…"  CBA § 6.3 (emphasis added).

> "The Association *shall* have 15 calendar days from receipt of the written decision to refer the decision to Arbitration."  CBA § 6.3 (emphasis added).

Moreover, grievances affecting more than one employee must be filed at Step Two of the Grievance Procedure:

> "Grievances filed affecting two or more signatory employees and involving the interpretation and/or application of a provision of this Agreement *must be* presented to the ONA labor representative or bargaining unit chair or vice-chair or grievance chair or steward and *will be* filed at Step Two of the grievance procedure."  CBA § 6.4 (emphasis added).

The Grievance Procedure culminates in final and binding arbitration:

> "The arbitrator's decision *shall* be final and binding upon the Hospital and the Association…"  CBA § 6.7 (emphasis added).

Applying the CBA's Grievance Procedure provisions here, Plaintiff has a grievance regarding the meal and rest period rules prescribed by the CBA.  CBA § 7.7.  She alleges that (in violation of the CBA) St. Charles "failed to ensure sufficient uninterrupted 30-minute meal periods" were taken by Plaintiff and other employees.  Complaint ¶ 6.  Plaintiff's grievance has not been resolved informally.[3]  As a result, Section 6.3 of the Grievance Procedure provides that

---

[3] St. Charles does not concede that Plaintiff has complied with the CBA's grievance procedure. However, that question is one of procedural arbitrability, which the arbitrator can decide. *Hospital and Institutional Workers Union Local 250, SEIU, AFL-CIO v. Marshal Hale Memorial Hosp.*, 647 F.2d 38, 40-41 (9th Cir. 1981) (holding that the question of whether plaintiff had

Page 8 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Plaintiff *shall* reduce her grievance to writing.  CBA § 6.3.  In addition, because Plaintiff purports to allege violations of the CBA affecting herself and other employees (including, presumably, other nurses subject to the CBA), her grievance affects two or more signatory employees under Section 6.4.  CBA § 6.4.  As a result, her complaint "*must be* presented to the ONA labor representative or bargaining unit chair or vice-chair or grievance chair or steward and *will be* filed at Step Two of the grievance procedure," via a written appeal to St. Charles's Chief Nursing Officer.  CBA § 6.3 (emphases added).  If Plaintiff's grievance is not resolved at Step Two, it would proceed to Step Three – after which, should it remain unresolved, it would be subject to *final and binding* arbitration.  CBA §§ 6.3, 6.7.

Ignoring that Plaintiff's Complaint allegedly affects all nurses party to the CBA, and that as a result, she "must" pursue the grievance process, the Opposition points to a single sentence in Section 6.2 of the CBA to argue that the entirety of the Grievance Procedure is permissive.  But Plaintiff's narrow reading of the CBA conflicts with the principles of contract interpretation that courts apply in deciding whether to compel arbitration under the FAA.  When interpreting arbitration provisions, courts examine the text of the provision in the context of the contract *as a whole*.  *R Source Corp. v. Sealevel Sys., Inc.*, -- F. Supp. 3d --, 2024 WL 982790, at *3 (D. Or. 2024) (quoting *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 271 P.3d 103, 109 (2011)).

Here, construing the CBA as a whole, the grievance and arbitration process is mandatory. Section 6.1 provides that the parties hope that "grievances [will] be adjusted informally wherever possible and at the first level of supervision."  If not, however, under Section 6.2 "the nurse may present a grievance in accordance with the procedures set forth in this Article."[4]  Those procedures

---

failed to comply with the CBA's grievance procedure was a question of procedural arbitrability for the arbitrator).

[4] Plaintiff contends that the mandatory "procedures" in Section 6.3 only apply *after* "the grievance procedure has been invoked," and do not dictate "when the grievance procedure may be invoked." Opposition at 7 n.3.  Plaintiff's argument ignores that the *entire Section 6* is titled "Grievance Procedure," so there is no distinction between "grievance procedure" and "grievance

Page 9 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

provide that nurses "shall" present grievances in writing, that grievances affecting multiple nurses "must" follow certain protocols, and that after following the three-step Grievance Procedure, any remaining disputes will be settled by "final and binding" arbitration. Understood in context, these provisions indicate that the "may" in Section 6.2 does not allow nurses to opt out of the Grievance Procedure and file in court; it simply means nurses do not *have* to file a formal grievance.

Courts construing similar provisions – and applying the maxims of interpretation applicable to arbitration provisions – routinely find those provisions mandatory. For example, in *R. Source Corp.*, the plaintiff filed a breach of contract claim. *R Source Corp.*, -- F. Supp. 3d --, 2024 WL 982790, at * 1. Defendant moved to compel arbitration under the parties' Sale Representative Agreement, which provided that: "[a]ny claim or controversy, arising out of this agreement, upon the request of any party involved, ***may*** be submitted and settled by arbitration in accordance with the rules of The American Arbitration Association then in effect in the state of South Carolina. The decision made pursuant to arbitration ***shall*** be binding…" *Id*. (emphasis added). Opposing the motion, plaintiff argued that the use of the word "may" in the arbitration provision meant arbitration was permissive, not mandatory. *Id*. at *3. The court disagreed, finding that although the term "may" was used, when reading the arbitration provision in the context of the Agreement as a whole, arbitration was mandatory. *Id*. That conclusion is consistent with how other courts have analyzed the use of the term "may" in arbitration clauses. *See, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204 n.1 (1985) ("The use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures." (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 658-59 (1965)); *ASUS Computer Int'l v. InterDigital, Inc.*, 2015 WL 5186462, at *5 (N.D. Cal. Sept. 4, 2015) (noting that

---

substance" found within the CBA. In any event, Section 6.4 ("Association Grievance") provides that grievances affecting multiple employees "must" invoke the grievance procedure in the first instance.

Page 10 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

"[s]everal courts have held that even when an arbitration clause uses permissive language, the clause still gives rise to mandatory arbitration") (citation omitted). Here, too, the fact that *one section* of the CBA's Grievance Procedure uses "may" does not make the entire article permissive.

The Opposition's only authority supporting its contrary position is a single unpublished California district court case, *Chavez v. Smurfit Kappa North America LLC*, 2018 WL 8642837 (C.D. Cal. Oct. 17, 2018). But in *Chavez*, the court found a provision using "shall" was *mandatory*. *Chavez* provides no support for the argument that the provisions here – which repeatedly use "shall", "will", and "must" – are permissive.

Because Plaintiff agreed to be bound by the terms of the CBA in her employment at St. Charles (including its Grievance Procedure) and Plaintiff's claims fall within the scope of the CBA's arbitration provision, the Court should grant St. Charles's Motion and compel arbitration.

### III.  CONCLUSION

For the foregoing reasons and the reasons stated in St. Charles's Motion to Compel Arbitration and Stay Proceedings, St. Charles respectfully requests that the Court grant its motion to compel arbitration and stay Plaintiff's claims against St. Charles pending arbitration.

DATED this 17th day of September, 2024.

**DAVIS WRIGHT TREMAINE LLP**

By *s/ Sarah Ames Benedict*
Sarah Ames Benedict, OSB #132675
sarahbenedict@dwt.com
Tim Cunningham, OSB #100906
timcunningham@dwt.com
560 SW Tenth Avenue, Suite 700
Portland, OR 97205
Telephone: (503) 241-2300

Attorneys for Defendant
St. Charles Health System, Inc.

Page 11 – DEFENDANT'S REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

DAVIS WRIGHT TREMAINE LLP
560 SW Tenth Avenue, Suite 700
Portland, Oregon  97205
(503) 241-2300 main · (503) 778-5299 fax